United States District Court
Southern District of Texas

**ENTERED**

June 28, 2017

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JERRY PEREZ, JR, | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | Case No. 1:13-cv-00067 |
| | § | |
| LORIE DAVIS, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |
| | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is Jerry Perez, Jr.'s Amended 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (hereinafter, Perez's "Amended Petition"), and supporting submissions. *See* Dkt. Nos. 53, 58, 67, 69. Respondent Davis has filed two identical Amended Motions for Summary Judgment with Briefs in Support, which argue that Perez's Amended Petition should be dismissed as time-barred. Dkt. Nos. 59 and 60. As both Amended Motions for Summary Judgment were filed on the same day, within minutes of each other, it appears that Respondent inadvertently filed her Amended Motion for Summary Judgment twice. It is, therefore, recommended that the Court deny the Amended Motion for Summary Judgment entered as docket number 59 as moot. Additionally, for the reasons provided below, it is recommended that Respondent's Amended Motion for Summary Judgment, entered as docket number 60, be denied.

# I.  Jurisdiction

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2241 and § 2254, which provide that jurisdiction is proper where the inmate is confined, or where his state conviction was obtained.   *See* 28 U.S.C. § 124(b)(5); *Wadsworth v. Johnson*, 235 F.3d 959, 961-62 (5th Cir. 2000).

# II.  Background and Procedural History

On September 28, 2007, a Cameron County jury convicted Perez of murder and engaging in organized criminal activity.  Dkt. No. 6-17 at 1-2, 4.  The jury found Perez guilty of murder pursuant to the State's "law of the parties" theory,[1] as the evidence did not show that Perez killed the victim himself.  *See id*; Dkt. No. 6-16 at 38, 41, 42. The trial court sentenced Perez to forty years of imprisonment on both counts, to be served concurrently.  *See Perez v. State*, No. 13-08-00037-CR, 2009 WL 3930476, at *1 (Tex. App.-Corpus Christi-Edinburg Nov. 19, 2009, no pet.).  Through his appointed appellate counsel, Philip T. Cowen, Perez appealed his conviction for engaging in organized criminal activity, but did not appeal his murder conviction.  *Id*.  The Thirteenth Court of Appeals summarized the underlying facts of Perez's case as follows:

---

[1]  *See* TEX. PENAL CODE ANN. § 7.01(a) (West) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."); *see id*., § 702(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;").

Appellant [Perez], and his girlfriend, Angie Marie Castillo, were walking past a house on Gardenia Street where approximately fifteen men were sitting outside. There was evidence that some of the men were members of the "Vallucos" gang. As appellant and Castillo passed the house, one of the men, whom Castillo identified as "Tomas," grabbed her bottom. In his video statement to police, appellant claimed that one of the men spit at him and that some of the men had knives. Appellant and Castillo walked away. Subsequently, appellant called his friend, "Flaco," and they contacted several members of the "Texas Syndicate" gang. Flaco picked up several men in a black Lincoln, including Juan Gerardo Gonzalez. Gonzalez testified that when they picked up a man named "Basuldo" or "Basaldo Galvan," either appellant or Flaco asked him to get a gun. Galvan complied, and the group drove to the house on Gardenia Street. Gonzalez and another man followed the Lincoln in a minivan. Appellant was in the Lincoln with Castillo, Flaco, Galvan, and another man. Gonzalez testified that when they arrived at the house on Gardenia, he saw Galvan fire in the direction of the house, and that when "they unloaded [the gun]," the Lincoln "took off." According to Gonzalez, one of the men who had been standing in front of the house then "pulled-out a sawed-off shotgun" and started shooting at the Lincoln. When the shooting stopped, the men in the minivan drove away.

Jose Angel Torrez, who was standing in front of the house, died as a result of a gunshot wound to the chest. . . . The jury convicted appellant of murder (Count I) and engaging in organized criminal activity (Count II). The trial court sentenced appellant to forty years' confinement on both counts to be served concurrently.

*Id.* (citations omitted).

The Thirteenth Court of Appeals left Perez's unchallenged murder conviction intact, but reversed and rendered an acquittal on the engaging in organized criminal activity conviction. *Perez*, 2009 WL 3930476, at *2. The Court found that the elements of the Count II offense had not been met. It noted that the evidence demonstrated that Perez had conspired to commit the single criminal act of a drive-by shooting, but that "this single criminal act [did] not establish the continuity required to establish the elements of the offense of engaging in organized criminal activity." *Id.*

Perez did not file a petition for discretionary review.  Dkt. No. 1 at 2.  Through Cowen, Perez filed his first state application for writ of habeas corpus on February 28, 2011.  Dkt. No. 3-1 at 6, 12.  This application was dismissed on May 18, 2011, as noncompliant with Texas Rule of Appellate Procedure 73.1.  *Id*. at 2.  Cowen filed a second state habeas application on June 7, 2011.  Dkt. No. 3-2 at 6.  On August 24, 2011, this application was also dismissed as noncompliant with Texas Rule of Appellate Procedure 73.1.  *Id*. at 2.

Cowen filed Perez's third state habeas application on October 18, 2011.  Dkt. No. 3-8 at 6.  In brief, this third application challenged Perez's murder conviction and alleged: (1) that his trial counsel, Peter C. Gilman, provided him with ineffective assistance; (2) that Perez was factually innocent because the principle charged with shooting the victim had been acquitted; and (3) that the indictment was invalid or defective.  *Id*. at 11-13.  The Texas Court of Criminal Appeals denied this application without written order, based on the findings of the trial court after a hearing.  Dkt. No. 3-4 at 2.  With respect to the factual innocence claim, the trial court had found that Perez was "not rendered 'factually innocent' by virtue of the acquittal of co-defendant Enrique Galvan Basaldu, because the evidence overwhelmingly showed that [Perez] was a party to the murder of the victim in this case."  Dkt. No. 3-8 at 28.

Cowen initiated this civil action by filing a 28 U.S.C. § 2254 petition on Perez's behalf (hereinafter, Perez's "petition") on April 18, 2013.  Dkt. No. 1 at 1.  In this petition, Perez alleged: (1) that his statement to the police was coerced; (2) that Gilman provided ineffective assistance when he failed to file a motion to suppress Perez's

coerced statement; (3) that Gilman provided ineffective assistance by failing to properly investigate the events leading up to Perez's coerced statement; and (4) that he is actually innocent of murder under the law of the parties because the alleged shooter was later acquitted.  Dkt. No. 1 at 5, 7, 8.

William Stephens, Lorie Davis's predecessor,[2] filed a motion for summary judgment on July 24, 2013.  Dkt. No. 7.  Respondent's motion for summary judgment claimed that Perez's petition should be dismissed because it was time-barred, and because Perez's claims lacked merit.  *Id.*  After considering Respondent's motion for summary judgment and Perez's response (Dkt. No. 10), the Court denied Respondent's motion without prejudice to refiling.  Dkt. No. 11.  The Court found that Perez's petition was untimely, but stated that the record contained evidence indicating that Perez might be entitled to equitable tolling.  *Id.* at 12-14.  The Court stated that it required more information to determine whether Perez's untimeliness was due, in whole or in part, to Cowen's ineffectiveness.  *Id.* at 13.  The Court also held that additional briefing was required with respect to Perez's claim that he was actually innocent.  *Id.* at 14.

The Court then ordered Cowen to file "a supplement addressing any possible arguments Perez may have for equitable tolling[.]"  Dkt. No. 11 at 14.  The Court also ordered Cowen to supplement Perez's actual innocence claim given that his

---

[2] "Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice." *Wooden v. Davis*, No. 4:15-CV-662-A, 2016 WL 3702988, at *1 n.1 (N.D. Tex. July 6, 2016).  Davis is automatically substituted as the party of record pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  *See id*; FED. R. CIV. P. 25(d).  The Court will refer to Stephens and Davis as Respondent in this Report.

presentation of the claim was limited to "six sentences and a reference to an exhibit containing the alleged shooter's judgment of acquittal." *Id*. at note 2.

On April 6, 2014, Cowen filed "Petitioner Jerry Perez's Supplement to Petitioner's Writ," along with over 600 pages of exhibits. Dkt. No. 15. Then, on May 14, 2014, Cowen filed a "Notice of Recent Case Law." Dkt. No. 22. Respondent filed a "Response to Petitioner's Supplement With Brief in Support" on May 27, 2014. Dkt. No. 23. On May 21, 2015, Cowen filed "Petitioner's Jerry Perez, Jr., Opposed Filing for the Record of His Mother's Affidavit as Response to Stephens' Motion for Summary Judgment[,]" along with an accompanying exhibit. Dkt. No. 25 (errors in original); Dkt. No. 25-1.

In these submissions Cowen argued that Perez's petition was timely, despite the Court's finding to the contrary, and despite the fact that the Court had already addressed Cowen's arguments on the subject. *See* Dkt. No. 15 at 4; Dkt. No. 11 at 7-11. After reviewing these submissions, the Court found that Cowen's briefing failed to address whether Perez was entitled to equitable tolling and set the matter for a hearing. Dkt. No. 26 at 4 ("As Cowen's briefing has done little to clarify the record, the Court finds that an evidentiary hearing is required on the issue of whether Perez is entitled to the equitable tolling of his federal statute of limitations deadline."). Cowen then submitted some additional briefing, wherein he incorrectly surmised that the purpose of the scheduled hearing was to determine if he had timely filed Perez's *state* habeas application. Dkt. No. 31 at 1 ("The only issue at the hearing, apparently, is whether the Tex. R. Crim. Pro. 11.07 was timely filed. If the writ is time barred, then

the court may have no other choice but to dismiss the 28 U.S.C. 2254 current proceeding.") (errors in original). Cowen argued that he had filed Perez's state habeas application on time. *Id*. at 7 ("The 11.07 was filed in February and thus was timely.").[3]

Prior to the hearing, the Court notified the parties that it would consider the potential conflict of interest between Cowen and Perez before addressing the issue of equitable tolling. Dkt. No. 33. At the hearing, Cowen announced that he had a conflict of interest with Perez and moved to withdraw as Perez's counsel. *See* Minute Entry dated June 3, 2016. The Court granted Cowen's oral motion. *Id*. After appointing new counsel to represent Perez, the Court reset the evidentiary hearing. Dkt. No. 36. Perez's new (and current) counsel, Seth H. Kretzer, filed an "Opposed Motion for Leave to File Amended Writ" on July 14, 2016. Dkt. No. 45. The Court granted Kretzer's Motion (Dkt. No. 46), and Kretzer filed Perez's instant Amended Petition. Dkt. No. 53.

Subsequently, Kretzer filed "Petitioner Perez's Supplemental Brief on Equitable Tolling" (hereinafter, "Perez's "Supplemental Brief"). Dkt. No. 58. Respondent filed her instant Amended Motion for Summary Judgment on October 5, 2016, two weeks before the scheduled evidentiary hearing. Dkt. No. 60. Respondent's Amended Motion for Summary Judgment argues that Perez's Petition should be dismissed because it is untimely, and because equitable tolling does not apply. *Id*. The Court held the evidentiary hearing on the issue of equitable tolling on October 19, 2016. *See* Dkt. No.

---

[3] As will be discussed below, Cowen's argument about the timeliness of Perez's state habeas application is disconcerting, not only because the timeliness of Perez's state application was not at issue, but because "Texas has no limitations period for a § 11.07 state habeas application[.]" *Jones v. Stephens*, No. 3:14-CV-3134-D BH, 2015 WL 5052296, at *4 (N.D. Tex. July 15, 2015), *report and recommendation adopted*, No. 3:14-CV-3134-D, 2015 WL 5076802 (N.D. Tex. Aug. 27, 2015).

66 (Transcript of Evidentiary Hearing).  After the hearing, Kretzer filed Perez's "Reply to Davis's Motion for Summary Judgment" (hereinafter, Perez's "Response").  Dkt. No. 67.  With the Court's permission, both parties also filed post-hearing supplemental briefs.  *See* Dkt. Nos. 68-70.

### III.  Governing Law

The applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA")[4] govern petitions brought under 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 335-336 (1997).  Pursuant to the AEDPA, a federal court may not grant habeas relief based upon a claim that was adjudicated on the merits by a state court unless the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011).

Codified as amended at 28 U.S.C. § 2244(d), the AEDPA also provides for a one-year limitations period applicable to petitions filed under 28 U.S.C. § 2254.  *Lindh v. Murphy*, 521 U.S. 320, 336.  Section 2244(d) provides:

> (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[4]  Pub. L. No. 104-132, 110 Stat. 1214 (1996).

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

 (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In "rare and exceptional circumstances," a § 2254 petitioner may be entitled to an equitable tolling of his AEDPA limitations period. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). A petitioner will only be entitled to equitable tolling "if he shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (2010) (internal quotation marks omitted). *See also Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (same). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 650 U.S. 631, 653 (internal quotation marks and citations omitted). The movant bears the burden of establishing an entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.),

*modified on reh'g*, 223 F.3d 797 (5th Cir. 2000)).  Determining whether to apply the equitable tolling doctrine often requires courts to make a "judgment call," and the decision is "an exercise of discretion by the district court."  *Alexander v. Johnson*, 294 F.3d 626, 630 (5th Cir. 2002).

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 56(a).  In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) (same).  Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831, 121 S.Ct. 84 (2000).  District courts considering motions for summary judgment in ordinary civil cases are required to construe the facts in the case in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255.  Nevertheless, Rule 56's application in the federal habeas context differs from its application in "the average civil case."  *Torres v. Thaler*, 395 F. App'x 101, 106 (5th Cir. 2010) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by*

*Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)).  As the Fifth

Circuit has explained:

> the rule applies only to the extent that it does not conflict with the habeas
> rules.  Therefore, § 2254(e)(1)-which mandates that findings of fact made
> by a state court are "presumed to be correct"— overrides the ordinary rule
> that, in a summary judgment proceeding, all disputed facts must be
> construed in the light most favorable to the nonmoving party.

*Smith v. Cockrell*, 311 F.3d 661, 668.

Ordinarily, however, there will be no state factual findings entitled to a

presumption of correctness on the issue of whether a petitioner is entitled to an

equitable tolling of their federal limitations period.  *See Boothe v. Quarterman*, No.

CIV.A. C-06-221, 2007 WL 2908802, at *18 (S.D. Tex. Oct. 5, 2007) ("AEDPA does not

govern evidentiary hearings on excuses for failing to comply with statutory

requirements.").  Thus, to overcome summary judgment where the State argues that

equitable tolling should not apply, a petitioner must raise a material question of fact

with respect to: (1) whether they have been pursuing their rights diligently, and (2)

whether some extraordinary circumstance stood in their way and prevented the timely

filing of their federal petition.  *Id*. at *18–19; *Bailey v. Dretke*, No. CIV.A. H-04-918,

2006 WL 355233, at *3–4 (S.D. Tex. Feb. 13, 2006); *Douglas v. Dretke*, No. CIV.A.H-05-

0851, 2005 WL 2792384, at *5 (S.D. Tex. Oct. 26, 2005); *see also Biester v. Midwest

Health Services, Inc.*, 77 F.3d 1264, 1269 (10th Cir. 1996) (to defeat summary

judgment, the petitioner must raise a genuine issue of material fact with respect to the

elements of equitable tolling); *Koons v. United States*, 995 F. Supp. 2d 905, 915 (N.D.

Iowa 2014) (same); *Moore v. Howes*, No. 08-12127, 2009 WL 722698, at *7–8 (E.D. Mich. Mar. 17, 2009) (same).

## IV. Discussion

As the Court has already correctly held, Cowen filed the petition initiating this civil action more than two years past the expiration of Perez's federal statute of limitations. *See* Dkt. No. 11 at 4-13. Due in part to Cowen's alleged ineffectiveness, however, Perez claims that he is entitled to an equitable tolling of his limitations period. *See* Dkt. Nos. 58, 67, 69. Respondent filed her instant Amended Motion for Summary Judgment after the Court set an evidentiary hearing for purposes of reviewing Perez's entitlement to equitable tolling, but two weeks before the evidentiary hearing occurred. Dkt. No. 60. Respondent's Amended Motion for Summary Judgment and subsequent briefing asserts that Perez is not entitled to equitable tolling. Dkt. No. 60 at 11-20; Dkt. No. 68 at 1-7; Dkt. No. 70 at 1-6. Because equitable tolling is inapplicable, Respondent states that Perez's Amended Petition should be dismissed as time-barred. *Id*.

Again, as noted above, a § 2254 petitioner "is entitled to equitable tolling only if he shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (internal quotation marks omitted); *Palacios v. Stephens*, 723 F.3d 600, 604 (same). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 650 U.S. 631, 653

(internal quotation marks and citations omitted).  The movant bears the burden of establishing an entitlement to equitable tolling.  *Alexander v. Cockrell*, 294 F.3d 626, 629.

The Supreme Court has recently reemphasized that equitable tolling decisions must be made on a "case-by-case basis."  *Holland*, 560 U.S. 631, 649-650 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).  In reversing an equitable tolling decision issued by the Eleventh Circuit Court of Appeals, the *Holland* Court stressed "equity's resistance to rigid rules[.]"  *Id.* at 651.  The Court stated that the purpose of equity is to "'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity[.]'"  *Id.* at 650 (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 248 (1944)).  Noting that equity is incompatible with the dogmatic application of law, the Court cautioned that the particular circumstances of each case should be taken into account when making equitable tolling decisions.  *Id.* at 650-51.

> The "flexibility" inherent in "equitable procedure" enables courts "to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices."  *Ibid.* (permitting postdeadline filing of bill of review).  Taken together, these cases recognize that courts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

*Id.* at 650 (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 248).

*See also Palacios v. Stephens*, 723 F.3d 600, 606 (refusing to create a bright-line rule regarding reasonable diligence because such a ruling would conflict with the Supreme

Court's "guidance that equitable tolling decisions 'must be made on a case-by-case basis'") (quoting *Holland,* 560 U.S. 631, 649-650); *Pabon v. Mahoney*, 654 F.3d 385, 399 (3d Cir. 2011) ("There are no bright lines in determining whether equitable tolling is warranted in a given case. Rather, the particular circumstances of each petitioner must be taken into account.").

To defeat summary judgment, the petitioner need only raise a material question of fact with respect to the elements of equitable tolling. *See, e.g., Boothe v. Quarterman*, 2007 WL 2908802, at *18–19 (petitioner raised material questions of fact on the elements of equitable tolling precluding summary judgment); *Koons v. United States*, 995 F. Supp. 2d 905, 915 (same); *see also Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1269 (to defeat summary judgment, the petitioner must raise a genuine issue of material fact with respect to the elements of equitable tolling); *Moore v. Howes*, No. 08-12127, 2009 WL 722698, at *7–8 (same); *Bailey v. Dretke*, 2006 WL 355233, at *3–4 (same); *Douglas v. Dretke*, 2005 WL 2792384, at *5 (same).

Applying *Holland*, the principles of equity, and all other applicable authority here reveals that Perez has presented the Court with a close case. Perez's conviction became final on or about December 19, 2009. *See* Dkt. No. 11 at 8 (citing TEX. R. APP. PROC. 68.2(a); *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012)). His federal limitations period expired on or about December 19, 2010. *Id*. (citing 28 U.S.C. § 2254(d)(1)(A)).[5]

---

[5] Respondent states that Perez's limitation period expired on December 21, 2009, rather than December 19, 2009. Dkt. No. 60 at 9. Respondent has not demonstrated that the date arrived at by the Court (December 19, 2009) is incorrect. Regardless, the two-day difference between December 19th and December 21st is immaterial here because Cowen filed the petition initiating this action more than two years past the expiration of Perez's federal limitations period. *See* Dkt. No. 11 at 4-13.

Through his mother, Trinidad Perez, Perez formally hired Cowen for purposes of seeking habeas relief on July 15, 2010, approximately five months before his federal limitations period expired.  *See* Dkt. No. 58 at 3-4 (containing an excerpt from the contract between Perez and Cowen); Dkt. No. 65 at 21-22 (containing Respondent's copy of the contract between Perez and Cowen).[6]  The contract between Perez and Cowen (hereinafter, the "2010 Contract") was provided by Cowen, and specifically stated that Perez was hiring Cowen "for representation ON POST-CONVICTION WRIT OF HABEAS CORPUS."  Dkt. No. 58 at 3 (capitalization in original); Dkt. No. 66 at 12, 14 (containing testimony that Cowen provided the 2010 Contract for Cowen's mother to sign on Perez's behalf).

The term "post-conviction writ of habeas corpus" describes a type of relief that can be sought in state or federal court.  *See Habeas Corpus,* The Free Legal Dictionary, http://legal-dictionary.thefreedictionary.com/writ+of+habeas+corpus (last visited on May 31, 2017) ("A writ of habeas corpus is authorized by statute in federal courts and in all state courts.").  The 2010 Contract does not specify whether Perez was retaining Cowen for purposes of pursuing state relief, federal relief, or both.  Dkt. No. 58 at 3-4.  At the evidentiary hearing, Cowen acknowledged that the 2010 Contract did not specify whether it pertained to state habeas relief, federal habeas relief, or both. Dkt. No. 66 at 49-50, 61.  Perez and his mother testified that Cowen did not discuss the difference between state and federal habeas relief until after Perez's federal limitations period had already expired.  *Id.* at 14-15, 23-24, 74, 75, 77-78, 80, 81-82, 84.

---

[6] As will be discussed below, with one exception, Cowen did not call or visit Perez, and Perez communicated with Cowen primarily through his mother and through writing him letters.

Specifically, Cowen did not discuss the difference with Perez until February of 2012, when he met with Perez immediately before Perez's state habeas hearing on February 7, 2012. *See id.* at 74-75; Dkt. No. 3-9 at 1 (noting that Perez's state habeas hearing took place on February 7, 2012).

The 2010 Contract contains a clause which states that the fees Perez agreed to pay did not cover services for:

    a.    Any appeal which may be taken to a Court of Appeals or to the Court of Criminal Appeals, nor does it include a petition for discretionary review to the Court of Criminal Appeals, or any other form of appellate review, whether in state or federal court;

    b.    Any expenses necessary to prepare and investigate the case and does not include any of the expenses of preparing the record for appeal;

    c.    A re-trial of the case if, for any reason, the case must be re-tried.

Dkt. No. 58 at 3 (errors in original). As Perez points out, this clause does not exclude services for, or associated with, the filing of a 28 U.S.C. § 2254 petition. *Id.* at 2.

Although Perez did not formally hire Cowen until July 15, 2010 (*see* Dkt. No. 58 at 3-4), Cowen advised Perez about his options shortly after the Thirteenth Court of Appeals issued its opinion, dated November 19, 2009,[7] leaving Perez's murder conviction intact. *See* Dkt. No. 65 at 26-27. In a letter dated December 11, 2009, eight days before Perez's murder conviction became final, Cowen informed Perez of the Court of Appeals' decision and advised Perez regarding his options for collateral relief. *Id.* In relative part, Cowen advised Perez as follows:

    As I told you in my April 14, 2009 letter, Count I, the conspiracy charge, cannot be challenged on appeal because your confession was the

---

[7] *See Perez v. State*, 2009 WL 3930476, at *1.

basis for the conviction, and because your attorney did not challenge your confession.

As I told you in that same letter, you now have to prepare a Post Conviction Writ under Tex. Crim. Pro. 11.07, and challenge the confession as being coerced, as you wrote me, and your mother told me, because police threatened your family to get you to confess. There is no record of this at this time. However, if your family members were threatened, you can use affidavits from them to support an 11.07, and then bring the police in as witnesses at an 11.07 hearing. There is a standard form for filing the 11.07. I enclose it for your use. You get one bite at the apple, however. You might want to hire counsel to do this, or have your mother hire counsel. There are 11.07 experts, and although I have been successful in some of these, because I was appointed, I will not do it because I think its unethical to attempt to take advantage of my knowing you through my appointment. It's my thing.

Your classification at the prison should change. You are no longer official convicted for gang affiliation. Also, the issue of a weapon might be something you want to challenge as you were only convicted under a conspiracy theory and nothing shows you possessed or even knew there was a weapon involved. I leave that up to you.

*If* you lose your 11.07, *you can file a writ in federal court* under 28 U.S.C. 2254, but you have one year from the date your conviction is final, *and you have exhausted all your state remedies*. Hence, *if* you lose your 11.07, *watch the deadlines*. That's another reason for thinking about hiring counsel.

*Id*. (errors in original, emphasis added).[8]

As this letter demonstrates, Cowen advised Perez that he could not file a federal petition unless his "11.07" application was denied, and he did not need to "watch" his federal habeas "deadlines" until after he lost his state habeas "11.07" case. Dkt. No. 65 at 27. Thus, eight days before Perez's federal habeas limitations period began to run, Cowen incorrectly advised Perez that his federal limitations period would not begin to

---

[8] Although Cowen refers to Count 1 as a conspiracy charge, Perez was charged with murder and engaging in organized criminal activity, not conspiracy. Dkt. No. 3-1 at 42, 44; Dkt. No. 6-16 at 36.

run until after he had exhausted his state remedies and failed in his attempt to seek state habeas relief.

The record confirms that Cowen continued to misadvise Perez regarding his federal limitations period right up until the time he withdrew in this civil action on June 3, 2016. At the evidentiary hearing, Perez testified that Cowen told him that he had "one year after the 11.07 was denied" to file his federal petition. Dkt. No. 66 at 80. Perez's testimony on this point was consistent. *See id.* at 75 ("he said, you know, we've got a good chance on the 11.07 and if you do – if they deny it, you know, I could file a 2254 and we've got one year after the 11.07 is denied to file a 2254."). Perez's testimony here was also credible in light of the fact that Perez's third state habeas application was denied on April 18, 2012, and Cowen filed Perez's federal petition one year later to the day on April 18, 2013. Dkt. No. 3-4 at 2, Dkt. No. 1. Further, in submissions to this Court, Cowen continued to incorrectly assert that he had filed Perez's federal petition on time. *See, e.g.*, Dkt. No. 15 at 3-4; Dkt. No. 31 at 11.

Cowen's continued representations to the Court that he filed Perez's petition on time additionally support Perez's testimony that, when he asked Cowen for status reports, Cowen would inform him that "everything's on time." Dkt. No. 66 at 78-79. The second contract between Cowen and Perez also supports Perez's testimony that Cowen incorrectly told Perez that he had filed Perez's federal petition on time. *See* Dkt. No. 58 at 5-6; Dkt. No. 65 at 23-24 (containing the State's copy of the second contract between Perez and Cowen). This second contract was signed on October 29, 2012, almost two years after the expiration of Perez's federal December 19, 2010

deadline. Dkt. No. 58 at 6. The contract states that Cowen's employment is for purposes of filing a "28 U.S.C. § 2254" petition. *Id*.

Cowen's misrepresentations were not limited to representing that he had filed Perez's petition on time, nor were they limited to his misstatements regarding when Perez's federal limitations period would begin to run. According to the signed, sworn affidavit of Perez's mother, Cowen advised that Perez had "one year from the date of [the Court of Appeals'] mandate[,]" to file his state application for habeas corpus. Dkt. No. 25-1 at 1. This advice was incorrect. As noted above, "Texas has no limitations period for a § 11.07 state habeas application[.]" *Jones v. Stephens*, 2015 WL 5052296, at *4; *see also Jones v. Thaler*, No. 3:12-CV-1031-B-BD, 2012 WL 4900924, at *2 (N.D. Tex. Oct. 1, 2012), *report and recommendation adopted*, No. 3:12-CV-1031-B, 2012 WL 4903173 (N.D. Tex. Oct. 16, 2012) (same).[9]

Ms. Perez's affidavit also indicates that, prior to receiving Cowen's incorrect advice, Perez intended to file his own state habeas application; and, in fact, had already drafted the application. Dkt. No. 25-1 at 1.

> My son worked on a writ on his own and sent it to me. It was very long. Worried that he might not be doing it well, I asked Mr. Cowen if he could help us. He said he might, but that he needed to find out whether we could still file timely, as he said that that the writ had to be filed within one year from the date of the mandate. Mr. Cowen came back and said that because the mandate had been corrected to reflect serious errors in the judgment, that the Court of Appeals had re-issued the mandate.

---

[9] At the hearing, Ms. Perez testified that Cowen "must have" written the affidavit and that she may have "signed it without even looking[.]" Dkt. No. 66 at 21. Still, Ms. Perez did not claim that Cowen fabricated the contents of the affidavit. Instead, she indicated that she could not remember "sitting down" to write and/or sign the affidavit. *Id*. at 21-22. Regardless, even if Cowen had fabricated the affidavit, it would still constitute uncontested evidence that he falsely represented the existence of a state habeas limitations period.

He felt that under the new mandate, we should be able to file the writ. We did, and it was accepted. And, now, seven years later, we are still working on the case. We spent about four years dealing with the local district court and with the Texas Court of Appeals.

*Id*. (errors in original).[10]

At the evidentiary hearing, Cowen confirmed that he received a copy of Perez's state habeas application from Ms. Perez. Dkt. No. 66 at 38-39. This evidence indicates that, but for Cowen's incorrect assertion that Perez could file his state writ application within one year of the issuance of the corrected mandate, Perez may have filed his state writ in time to toll his federal limitations period.[11]  Instead, Perez retained Cowen on July 15, 2010, and Cowen proceeded to wait and file Perez's first state application on February 28, 2011, 364 days after the Thirteenth Court of Appeals issued its corrected judgment and mandate on March 1, 2010. *See* Dkt. No. 11 at 8, 11 (noting that the Thirteenth Court of Appeals issued its corrected judgment and mandate on March 1, 2010, and that Cowen incorrectly filed Perez's first state habeas application on February 28, 2011).

---

[10]  Contrary to Cowen's assertions, the Thirteenth Court of Appeals did not correct its judgment and reissue its mandate to correct serious errors in the judgment. *See* Dkt. No. 11 at 8-11. As the Court has already held, the Court of Appeals corrected its judgment and reissued its mandate to correct a clerical/ministerial error. *See id*. When a court corrects its judgment and reissues its mandate to correct clerical/ministerial errors, it does not restart a federal petitioner's AEDPA limitations period. *See id*. at 10 (collecting cases). Regardless, even if the date of the reissued mandate controlled as Cowen incorrectly argued, Perez's federal petition would still be untimely because Cowen failed to properly file a state application within one year of the reissued mandate. *See id*. at 9, 11 (noting that the Court of Appeals issued its corrected judgment and corresponding mandate on March 1, 2010, and that Cowen did not properly file a state habeas application until October 18, 2011).

[11]  There is also some evidence that Perez would have filed his own state application, but for Cowen's request to "do the writ." Dkt. No. 66 at 28 (containing Cowen's testimony that he "asked [Perez's] mom to do the writ.").

Relatedly, Cowen testified that, when he filed Perez's federal petition, he was not sure if it was timely, and that he did not "compute the AEDPA deadline" at the time Perez hired him in 2012. Dkt. No. 66 at 39, 63, 66; *see also id.* at 18 (containing Trinidad Perez's testimony that, at some point, Cowen asked Trinidad Perez if she thought he had filed Perez's federal petition on time). He also acknowledged that, at the time he was writing Perez's state habeas application, he did not think about Perez's federal rights because he thought there "were no Federal issue[s]" and that Perez "would get a fair hearing in State court." *Id.* at 43.

Critically, Cowen's testimony before this Court reveals that he may have been mentally impaired while Perez's federal limitations period was running, and thereafter. Again, Perez's federal limitations period began to run on December 19, 2009, and expired on December 19, 2010. *See* Dkt. No. 11 at 8. Cowen entered into the 2010 Contract with Perez on July 15, 2010. Dkt. No. 58 at 3-4. Cowen testified that he fell down on July 15, 2009, and began taking pain medication which "absolutely" affected his ability to practice law. Dkt. No. 66 at 51-53. Cowen claimed that he stopped taking the pain medication in September of 2009. *Id.* at 53. But, he also stated that after he stopped taking the pain medication, he was still mentally impaired. *Id.* at 54 ("So when I stopped taking the pain medication, it was interesting because, I mean, I was sitting in bed. I couldn't move around, whatever, and I remember I couldn't write a sentence and I had to work and I spent a week trying to write a paragraph."); *see also* Dkt. No. 31 at 9 ("please note that counsel had no choice but to rely on his staff to provide information. Counsel notes to the court that he

slipped in the Jail and cut his kneecap in half on July 15, 2009, and did not become fully functional for over two years.") (errors in original).

Respondent points out that, at the hearing, Cowen testified that he had recovered by the time he executed the 2010 Contract. Dkt. No. 70 at 3; Dkt. No. 66 at 67-68. With respect, however, Cowen's testimony at the evidentiary hearing combined with his written submissions to this Court cast doubt on his declarations of recovery. To begin, Cowen's testimony suggests that he had difficulty judging his own mental recovery.

> I was recovered. I was concerned about myself and I remember reading a book by John Gardner called *Resurrection* and I was thinking about it at the time, you know, that this guy thought -- I know it seems like I'm going around but actually it makes sense what I'm trying to say. A person's sick, they don't realize it's affecting the way they think.
>
> So I have to tell people, look, if I'm weird, tell me. If I'm not thinking right, tell me. That's – and I would tell my staff. I want to make sure because I made a lot of important decisions and so I questioned my ability personally to do it and I always stayed on top of it and I was reluctant to do anything here as you can see from the December letter because I just didn't trust myself. By July, I began to think, well, I think I can do it. Plus, you know, you've got to eat and you just have to come back to life.

Dkt. No. 66 at 67-68. Cowen also described taking pain medication again in connection with subsequent injuries and further medical treatment. *Id*. at 56-57. Relatedly, Cowen appeared to have some difficulty answering the questions posed to him at the evidentiary hearing regarding his representation of Perez during the relevant time period. *See, e.g., id*. at 27-28, 36, 39, 43, 50-51.[12]

---

[12] The Court regrets the need to make these observations and does not make them lightly. Nevertheless, Perez's claims of attorney abandonment require the Court to address his

Likewise, Cowen's submissions to this Court paint a troubling picture. After finding that Perez's petition was time-barred, Senior United States District Judge Tagle issued an order instructing Cowen to "file a supplement addressing any possible arguments Perez may have for equitable tolling on or before March 3, 2014." Dkt. No. 11 at 1. Judge Tagle's order discussed the equitable tolling doctrine and explained why the Court required supplemental briefing. *Id*. at 12-13. Despite the clarity of Judge Tagle's order, Cowen failed to comply with Judge Tagle's instructions. *See* Dkt. No. 26 (noting Cowen's failure to comply with Judge Tagle's order). Rather than address any arguments Perez might have for an equitable tolling of his federal deadline, Cowen argued that he filed all three of Perez's *state* habeas applications on time. Dkt. No. 15 at 3 ("Counsel did file the first, second and third writs. Counsel maintains, even under an AEDPA analysis, these writs are not untimely. This is true on the same basis which counsel argued In response to Respondent's Motion for Summary Judgment.") (errors in original).

Cowen additionally asserted, incorrectly, that Perez hired Cowen to "pursue a state writ" on October 29, 2012. Dkt. No. 15 at 3.[13] Cowen also claimed that "the time for filing [Perez's] federal writ began ninety days after the Texas Court of Criminal Appeals issued its judgment on the merits of Petitioner's 11.07 writ on April 18, 2012." *Id*. at 3-4. In addition to certain other confused assertions, Cowen stated that, "[t]his Court, this federal district court, does not have the power to correct the Texas Court of

---

assertion that Cowen's mental impairments caused the untimely filing of his petition. *See* Dkt. No. 69 at 2-4.

[13] As noted above, Perez first hired Cowen for purposes of obtaining collateral habeas relief on July 15, 2010. Dkt. No. 58 at 3-4; *see also* Dkt. No. 65 at 21-22.

Criminal Appeals own determination that the 11.07 writ was timely filed, and in such good order that the Texas Court of Criminal Appeals reached the merits of the case." *Id*. at 6.

As Cowen's supplement was nonresponsive to Judge Tagle's clear instructions, the Court issued an order setting an evidentiary hearing on "the issue of whether Perez is entitled to the equitable tolling of his federal statute of limitations deadline." Dkt. No. 26. Prior to the evidentiary hearing, Cowen filed "Petitioner's Jerry Perez's Jr.'s Counsel's Response to Court's Order Concerning Hearing on June 3, 2016" (hereinafter, Cowen's "Response"). Dkt. No. 31 (errors in original). In this Response, Cowen incorrectly surmised that the purpose of the scheduled hearing was to determine if he had timely filed Perez's state habeas application. Dkt. No. 31 at 1 ("The only issue at the hearing, apparently, is whether the Tex. R. Crim. Pro. 11.07 was timely filed. If the writ is time barred, then the court may have no other choice but to dismiss the 28 U.S.C. 2254 current proceeding.") (errors in original). Cowen's Response repeated his assertion that he had filed Perez's state habeas application on time. *Id*. at 2, 7.

After the Court notified Cowen of his potential conflict of interest with Perez, Cowen withdrew from representation. *See* Dkt. Nos. 33, 36. The Court reset the evidentiary hearing and appointed Seth H. Kretzer to represent Perez at the hearing. *Id*. The Court additionally allowed Kretzer to amend Perez's petition to add claims challenging Cowen's alleged ineffectiveness on appeal. *See* Dkt. Nos. 45 and 53. Through Kretzer Perez asserts that, when Cowen undertook to represent Perez for purposes of seeking state habeas relief, Cowen did not explain the conflict of interest

that would be created by Cowen's failure to argue that he had provided Perez with ineffective assistance on appeal.  Dkt. No. 67 at 2.

At the evidentiary hearing, Perez testified that he knew that Cowen had injured his kneecap and had a "heart attack or some kind of operation," but he did not know that Cowen had any other impairments.  Dkt. No. 66 at 82-83.  He claimed that, had he known, he would have sought the services of another attorney.  *Id*. at 83.  He additionally stated that:

1.  He employed Cowen for the purpose of obtaining habeas relief.  Dkt. No. 66 at 85.  He had counted on Cowen to proceed correctly and depended on him.  *Id*. at 84, 86. He only spoke to Cowen in person the day before and morning of his state habeas hearing on February 7, 2012.  *Id*. at 70, 74, 76; *see* Dkt. No. 3-9 at 1 (demonstrating that Perez's state habeas hearing took place on February 7, 2012).  Their discussions lasted approximately fifteen minutes.  Dkt. No. 66 at 75.

2.  During their discussions, Cowen told him that if his state habeas petition was denied, Cowen could file a "2254[;]" but, at the time, Perez "didn't know what he was talking about" because he was still attempting to learn about "the legal process."  Dkt. No. 66 at 75.  After his state habeas application was denied, Perez wrote his mother and "told her there was another process that Cowen had told me under the 2254 when they denied my 11.07."  *Id*. at 77-78.  He asked his mother to ask Cowen about filing a § 2254 petition and subsequently engaged Cowen for the purpose of seeking § 2254 relief.  *Id*. at 78.

3.   Other than the discussions he had with Cowen before his state habeas hearing, Perez did not speak with Cowen directly.  Dkt. No. 66 at 71.  Perez did write Cowen letters.  *Id*.[14]  But, Cowen's letters to Perez were infrequent and Perez primarily communicated with Cowen through his mother.  *See id*. at 71-83.[15]

4.   Cowen did not call or visit Perez, and Perez could not call Cowen because he was in administrative segregation and did not have access to a phone.  Dkt. No. 66 at 71. ("Q.  Okay.  And – so what was your ability to access the phone during that period of time?  A.  None.").  Perez entered administrative segregation upon entering Texas Department of Criminal Justice ("TDCJ") custody, and remained there for six or seven years.  *Id*. at 71-72.  His ability to conduct legal research on his own was also limited due to the fact that he was in administrative segregation.  *Id*. at 72-73.

> Q. . . . . I assume you didn't know anything about habeas before you were indicted, right?
>
> A.  No, sir.  I didn't know.
>
> Q.  Okay. Did you  -- how did you learn?  Did you go to the prison library or what did you do?
>
> A.  Well I learned through some – my neighbors.  In segregation, you're by yourself.  So I had to holler, you know – you know, what's going on?  This and this and they're tell me a little bit of what was the next step and stuff like that, right but then later on, I found out how to put in a slip to

---

[14]  In an unsigned, unsworn document entitled "Respondent's Summary Exhibit," Respondent states that there is "only one instance of correspondence" between Perez and Cowen "documented in the incoming and outgoing legal and special mail logs of the Allred Unit during the period of May 2010 to December 2010.  Namely, outgoing mail from Jerry Perez, Jr. to Philip Cowen on November 8, 2010."  Dkt. No. 20.  Respondent states that "[t]his summary is supported by voluminous records of regularly conducted activity of the Allred Unit as certified by affidavit testimony of the records custodian."  *Id*.  There is, however, no such affidavit before the Court for the time period in question.

[15]  There are only two letters from Cowen to Perez in evidence.  *See* Dkt. No. 65 at 25-27.

go to the law library but it's very limited in Seg.  You just get to go, like, get two cases a week.  So, you know, it was kind of hard to learn more about the law through Seg.

Q.  Sure.  How often did you though take those limited trips to that law library?

A.  Every chance I could.

Q.  Okay.

A.  But, you know – but like I said, it was limited because we were in Seg. Sometimes, you know, they wouldn't even bring you the material you wanted.  They'd bring you something else because it was other inmates doing the – bringing you the copies.  Then you had to know the exact versus-versus and I didn't have no access to none of that.

Q.  Sure.  With all those limitations, if you could just tell the Court very briefly, what did you learn about habeas?

A.  Not too much of nothing.

*Id*. at 72-73.

The record evidence supports Perez's testimony regarding his administrative segregation status.  According to the signed, sworn Affidavit of Travis Turner, the TDCJ's Chairman of "Classification and Records," Perez entered administrative segregation before his federal limitations period began to run and remained in administrative segregation until May 29, 2013, well after the expiration of his December 19, 2010 federal limitations deadline.  Dkt. No. 69-1 at 1 ("Offender Perez was assigned to Administrative Segregation from 5/13/08 to 5/29/13").

Respondent argues that "TDCJ access-to-courts directives establish that administratively segregated inmates have sufficient access to the law library."  Dkt. No. 68 at 2.  In support of this argument, Respondent references the TDCJ's "Rules

Governing Offender Access to the Courts, Counsel, and Public Officials" (hereinafter, the TDCJ's "Offender Access Rules"). These Offender Access Rules were in place when Perez's federal limitations period was running. Dkt. No. 68-1 at 2, 18, 32. In relevant part, the Offender Access Rules provide as follows:

> C.  Administrative Segregation, Lockdown, G5/J5/P5, Medical Isolation, Temporary Detention, Trusty Camp, Work Camp, and Death Row Offender Access to the Law Library (Indirect Access)
>
> 1.  Legal Research Material:  Offenders in any of the above categories shall not be afforded direct access to the law library.  They shall be allowed to request and receive up to three items of legal research materials per day, delivered on three alternating days per week (e.g., M-W-F) from the unit's law library collection for in-cell use.
>
> 2.  Legal Visits:  Offenders may request a legal visit for the purpose of conferring with another offender on legal matters by sending an I-60, Offender Request to an Official to the unit access to courts supervisor.

*Id*. at 7.

These Offender Access Rules support Perez's sworn, credible testimony that he was dependent upon other inmates to bring him legal materials, either in his cell, or in the law library. Moreover, Respondent has not rebutted Perez's credible testimony that: (1) the inmates would sometimes bring the wrong material; (2) he had to know the exact name of the legal material in order to request it; and (3) he attempted to go to the law library every chance he could.

Respondent argues that the prison law library at Perez's place of incarceration was not deficient because the "prison libraries make accessible, at a minimum, 'Federal and State Postconviction Remedies and Relief — Habeas Corpus.'" Dkt. No. 70 at 5.

The Offender Access Rules provided by Respondent confirm that the TDCJ's law library collection includes an item entitled, "Federal and State Postconviction Remedies and Relief – Habeas Corpus." Dkt. No. 68-1 at 35.  Still, the Offender Access Rules do not otherwise identify this item.  Based on the description provided, the item could be a book, a pamphlet, or an article, published at any time, by anyone.  Based on the description provided, the Court cannot tell if Perez had access to materials which would have allowed him to calculate his specific federal limitations period.  Further, the Offender Access Rules state that inmates in administrative segregation may only receive copies of legal material "from the unit's law library collection for in-cell use." *Id.* at 7.  But, the Offender Access Rules do not describe what is available in this collection for in-cell use, nor do they make it clear that Perez could have accessed materials defining the AEDPA limitations period through this collection.

Taking into account all of the aforementioned facts and testimony, the Court makes the following findings:

1. Perez hired Cowen to represent him for purposes of obtaining post-appeal habeas relief;

2. The 2010 Contract was supplied by Cowen;[16]

3. The 2010 Contract did not exclude services for federal habeas relief, or otherwise limit Cowen's services to pursuing state habeas relief;

4. Cowen did not explain the difference between state and federal habeas relief to Perez prior to the expiration of Perez's federal

---

[16]  Under Texas law, to the extent that a term in a contract is ambiguous, a court must construe the ambiguous term against the attorney-drafter. *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 70 F. Supp. 3d 782, 787 (E.D. Tex. 2014) (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000)).

limitations period, except to indicate that Perez could not pursue federal relief until after his state habeas application was denied;

5.    Cowen incorrectly told Perez, in writing, that his federal limitations period would not begin to run until after his state habeas application was denied;

6.    Cowen provided Perez with this incorrect information before Perez's federal limitations period began to run;

7.    Perez hired Cowen for purposes of obtaining post-appeal habeas relief five months before his federal limitations period expired;

8.    Cowen did not conduct adequate research to determine when Perez's limitations period would begin to run;

9.    When Perez would inquire into the status of his habeas proceedings, Cowen would inaccurately inform him that everything was on time;

10.   Cowen made these representations despite being unsure if everything was on time;

11.   Cowen continued to mispresent Perez's federal limitations period throughout his representation of Perez;

12.   Perez relied upon Cowen's advice regarding his limitations period;

13.   As Cowen had correctly advised Perez that the federal limitations period was one year, and he had to exhaust all available state remedies before he could obtain federal relief, Perez's reliance upon Cowen's incorrect advice regarding when his federal limitations period would begin to run was logical and reasonable in context;

14.   A material question of fact exists with respect to whether Perez would have filed his own state habeas application in time to toll his federal limitations period, but for Cowen's incorrect suggestion that a one-year limitations period applied to the filing of state habeas petitions;

15.   Once hired, Cowen failed to toll Perez's federal limitations period by properly filing a state habeas application, despite having more than 5 months to do so;

16.   Once hired, Cowen let Perez's federal limitations period expire;

17.   Cowen believed he was mentally impaired before undertaking Perez's representation;

18.   Cowen admitted that he had experienced difficulty determining if he had recovered from his mental impairment;

19.   Cowen's testimony before this Court constitutes some evidence that he had not fully recovered during the time Perez's limitations period was running;

20.   The State has not refuted Perez's claim that he was entirely dependent on other inmates to bring him legal materials, either in the law library, or in his cell, prior to the expiration of his federal limitations period;

21.   The State has not refuted Perez's claim that he had to know the exact name of the legal material he wished to view in order to request the material;

22.   A material question of fact exists with respect to whether Perez had access to materials or advice which would have allowed him to discover his federal limitations deadline on time;

23.   A material question of fact exists with respect to whether Cowen's ineffectiveness prevented Perez from timely filing his federal petition.

In addition to these findings, the Court finds that: (1) the testimony provided by Perez at the evidentiary hearing was largely credible; (2) the testimony provided by Trinidad Perez was largely credible, although undermined somewhat by her lack of recollection; (3) Cowen's testimony was mostly credible, but undermined in places by vagueness and a lack of recollection; (4) Cowen provided Perez with ineffective assistance of counsel by allowing Perez's federal limitations period to expire, and by misrepresenting the limitations period and the timeliness of his own actions.

Cowen's ineffectiveness by itself, however, is not sufficient to show Perez's entitlement to equitable tolling.  In addition to showing reasonable diligence, Perez must show that that Cowen's ineffectiveness constitutes an extraordinary circumstance that "stood in his way and 'prevented' timely filing." *Palacios v. Stephens*, 723 F.3d 600, 604 (citations omitted).   In other words, Perez must show that Cowen's ineffectiveness caused the untimely filing.  *Id; see also Holland*, 560 U.S. 631, 649 (requiring a causal connection between the extraordinary circumstances and the untimely filing); *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) ("As for the 'extraordinary circumstance' prong, like the Supreme Court's articulation in *Holland*, we too have required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition."); *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline."); *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (requiring a causal connection between the extraordinary circumstances and the untimely filing); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.").

An extensive review of equitable tolling decisions in this and other circuits reveals that, in most instances, petitioners are unable to demonstrate that attorney ineffectiveness caused the untimely filing of their petitions unless they also show that

there was nothing they could have reasonably done on their own to assure a timely filing. As applied, then, the extraordinary circumstances prong of the equitable tolling test is logically intertwined with the reasonable diligence prong of the test. This observation is borne out by the paucity of opinions finding that extraordinary circumstances prevented the timely filing, but equitable tolling was still unwarranted due to an absence of reasonable diligence on the part of the petitioner. Put simply, either the extraordinary circumstances prevented the timely filing, or they did not; and, if they did not, it was because the petitioner was not "reasonably" diligent. *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (noting that the causal-connection requirement of the equitable tolling test prevents equitable tolling relief "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."). Given that the causal-connection requirement intertwines the two prongs of the equitable tolling test, some might argue that there is really only one test (i.e., "was the petitioner diligent enough in light of all obstacles and extraordinary circumstances?"). Indeed, some have, albeit unsuccessfully. *See Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755–56, 193 L. Ed. 2d 652 (2016) (applying *Holland* and rejecting the Menominee Indian Tribe of Wisconsin's argument "that diligence and extraordinary circumstances should be considered together as two factors in a unitary test").

Regardless of, or perhaps due to, the interrelated nature of the two prongs of the equitable tolling test, this Court need not determine if Cowen's ineffectiveness constituted an extraordinary circumstance which prevented the timely filing of Perez's

petition, if it first finds that Perez did not exercise reasonable diligence in timely pursuing his federal habeas rights.  *See, e.g., Palacios*, 723 F.3d 600, 602 (declining to reach the extraordinary circumstances prong of the test because "Palacios did not pursue his rights with reasonable diligence"); *United States v. Perkins*, 481 F. App'x 114, 118 (5th Cir. 2012) (declining to reach the extraordinary circumstances prong because the petitioner failed to demonstrate reasonable diligence).

Respondent asserts that Perez did not exercise reasonable diligence in pursuing his federal habeas rights.  Dkt. No. 60 at 11-18; Dkt. No. 68 at 2-7; Dkt. No. 70 at 4-6. Respondent's arguments are compelling in a number of respects.   When compared to the examples of diligence provided by the courts in this circuit and elsewhere, Perez's diligence is underwhelming.  Unlike other petitioners seeking equitable tolling relief, Perez did not: (1) attempt to file his own state application in time to toll his federal limitations period; (2) attempt to file his own federal petition on time; (3) file a "protective" federal petition to prevent the expiration of his limitations period;[17] (4) conduct more successful research regarding his federal limitations period; (5) contact Cowen more frequently; (6) question Cowen about his deadlines more diligently; (7) hire a different attorney; or (8) seek to represent himself when Cowen failed to contact Perez more frequently.

Nevertheless, under *Holland*, the Court cannot find that Perez's failure to do these specific things necessarily constitutes a lack of reasonable diligence unless his failure to do these things, in the context of his circumstances, shows a lack of

---

[17] *See Holland*, 560 U.S. 631, 672 ("Holland might have filed a "protective" federal habeas application and asked the District Court to stay the federal action until his state proceedings had concluded.") (internal citations and quotations omitted).

reasonable diligence.  To hold otherwise would run afoul of *Holland*'s instruction to take the particular circumstances of each petitioner into account when making equitable tolling decisions.  *See Holland*, 560 U.S. 631, 649-651; *see also Palacios*, 723 F.3d 600, 606 (refusing to create a bright-line rule regarding reasonable diligence because such a ruling would conflict with the Supreme Court's "guidance that equitable tolling decisions 'must be made on a case-by-case basis'") (quoting *Holland,* 560 U.S. 631, 649-650); *Pabon v. Mahoney*, 654 F.3d 385, 399 ("There are no bright lines in determining whether equitable tolling is warranted in a given case.  Rather, the particular circumstances of each petitioner must be taken into account.").  As the Respondent correctly notes, the diligence a petition must show "is relative; that is, a petitioner's efforts should be viewed in light of the circumstances—including his attorney—that he was up against."  Dkt. No. 60 at 16 (citing *Palacios v. Stephens,* 723 F.3d 600, 606).  Diligence "depends upon the circumstances faced by the prisoner." *Koons v. United States*, 995 F. Supp. 2d 905, 914 (citations omitted).

Viewing Perez's diligence in the context of his circumstances, the Court cannot say, at this juncture, that Perez failed to exercise reasonable diligence.  Again, the "diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."  *Holland*, 650 U.S. 631, 653 (internal quotation marks and citations omitted).  Respondent argues that its Amended Motion for Summary Judgment should be granted, but Perez has raised material questions of fact regarding his diligence, and whether Cowen's ineffectiveness stood in his way and prevented the timely filing of his petition.  Specifically, as noted above:

1.     A material question of fact exists with respect to whether Perez would have filed his own state habeas application in time to toll his federal limitations period, but for Cowen's incorrect suggestion that a one-year limitations period applied to the filing of state habeas petitions;

2.     A material question of fact exists with respect to whether Perez had access to materials or advice which would have allowed him to discover his federal limitations deadline on time.

3.     A material question of fact exists with respect to whether Cowen's ineffectiveness prevented Perez from timely filing his federal petition.

Accordingly, it is recommended that Respondent's Amended Motion for Summary Judgment be denied. *See Boothe v. Quarterman*, 2007 WL 2908802, at *18–19 (petitioner raised issues of material fact on the elements of equitable tolling precluding summary judgment); *Koons v. United States*, 995 F. Supp. 2d 905, 915 (N.D. Iowa 2014) (same); *see also Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1269 (to defeat summary judgment, the petitioner must raise a genuine issue of material fact with respect to the elements of equitable tolling); *Moore v. Howes*, No. 08-12127, 2009 WL 722698, at *7–8 (same); *Bailey v. Dretke*, 2006 WL 355233, at *3–4 (same); *Douglas v. Dretke*, 2005 WL 2792384, at *5 (same).

Should the Court adopt this recommendation, the undersigned will issue a separate report and recommendation containing findings concerning Perez's entitlement to equitable tolling. Additionally, the Court will likely order more briefing as neither party has addressed the current standard of proof applicable to Perez's burden. *See Boothe v. Quarterman*, 2007 WL 2908802, at *19-20 (discussing the preponderance of evidence standard and noting that, in 2007, the Fifth Circuit had "not

articulated the exact quantum of proof necessary to show that a habeas petition should be equitably tolled.") (citations omitted).  *See also Holt v. Frink*, No. 15-cv-01302-EMC, 2016 U.S. Dist. LEXIS 3781, at *12-13 (N.D. Cal. Jan. 12, 2016) (collecting cases applying the preponderance of evidence standard).

## V.  Recommendation

The undersigned recommends that the Court: (1) deny Respondent's Amended Motion for Summary Judgment Motion (Dkt. No. 60); and, (2) deny Respondent's duplicative Amended Motion for Summary Judgment (Dkt. No. 59) as moot.

## VI.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 28th day of June, 2017.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**